PHILIPS ELECTRONIC AND PHARMA-
CEUTICAL INDUSTRIES CORP.,
Plaintiff,
v.
ELECTRONIC PRODUCTS, INC.,
Defendant.
Civ. A. No. 63–955–S.

United States District Court
D. Massachusetts.

June 9, 1966.

J. Owen Todd, Earle C. Cooley, Edmund Burke, Hale & Dorr, Boston, Mass., Januar D. Bove, Jr., Connolly, Bove & Lodge, Wilmington, Del., Donald P. Gillette, New York City, for plaintiffs.

Robert L. Thompson, Dike, Thompson, Bronstein & Mrose, Boston, Mass., for defendant.

## OPINION

SWEENEY, District Judge.

In this action the plaintiff charges that the defendant has infringed and is continuing to infringe Claims 1 and 2 of U. S. Patent No. 3,035,372, which is a method or process patent for making glass-to-metal seals. The defendant denies infringement and asserts invalidity of the patent for want of invention and because the applicant was not the first and original inventor of the matter claimed. Additional contentions are made by the defendant that the patent is invalid because a) the prosecution in the patent office was not lawful, b) the specification and claims are vague and indefinite and do not comply with 35 U.S.C. § 112, and c) new matter was added during the prosecution of the applications.

### Findings of Fact

Originally, Claim 3 was also in suit but during the progress of the trial it was withdrawn. The first application for this patent was filed on March 17, 1951. A second application was filed December 4, 1953. In 1955 and 1956, British and Canadian patents were issued to the plaintiff, both covering the same process as is involved in the instant case. Thereafter, on April 5, 1957, a third U. S. application was filed and the two previous applications were abandoned. The third was successfully prosecuted to completion and the patent issued on May 22, 1962. It was only after an appeal to the Patent Office Board of Appeals from a decision of the Examiner denying the patent that the patent issued on direction of the Board. After this, the defendant was offered a license under the patent, which it declined. This action was filed on November 18, 1963.

I find that the defendant has not established invalidity of the patent by reason of the defenses described in "a)," "b)," and "c)" of the first paragraph

and that they have no merit. The defense of invalidity is now narrowed to the question of want of invention and to the contention that the applicant was not the original inventor.

The patent discloses a new method of making a three-element compression glass-to-metal seal. This type of seal is used for making electrical connection between elements of transformers, capacitors, diodes and relays. It consists of the assembly, in a jig, of an outer metal member, which can be called a "ring" although it may be otherwise shaped, and an inner metal member which is a conductor, with glass, usually preformed from powder, between the ring and the conductor to space and insulate the conductor from the outer metal member. When these three elements are unified by heat treatment at about 1900° F. and cooled, and attached to a metal or glass housing, such as a light bulb, radio tube or other unit, they make a pressure-tight enclosure between the conductor and the housing.

Any glass-to-metal seal, during its use, is subject to vibration and shock, thermal or mechanical; and it was the aim of the industry to make a seal as strong as possible, particularly the glass member. Prior to the disclosure of this patent, makers of glass-to-metal seals followed the thought that the seals could not tolerate the stresses and pressures that build up within the glass when it is cooled from a liquid state. It was believed that it was necessary to pass the glass slowly through the annealing range in order to remove these stresses. The annealing point of glass is " '[t]he temperature at which internal stress * * * is substantially relieved in 15 minutes * *' "* The annealing range lies within a few degrees above the annealing point to about 75°C. below that point.

The making of compression seals by utilizing a ring having a higher coefficient of thermal expansion (herein-

---

* *Anneal*—" 'To prevent or remove objectionable stresses in glassware by controlled cooling from a suitable temperature.' " Defendant's Proposed Findings of Fact and Conclusions of Law, p. 8.

after called CTE) than the glass was known. Compression resulted from the fact that the metal member cooled faster than the glass member, thus, making a tight, compressed union. This type of compression seal was always annealed thoroughly so as to remove stresses within the glass and was called a "mismatched" seal by reason of the variation in the CTE's. It well may be that if the only teaching in the patent in suit was a new ratio of CTE's between the outer metal, the inner metal and the glass it would not attain the dignity of an invention but would be an obvious step to one well instructed in the art of making seals of this type. The knowledge that a good compression seal could be made through variable CTE's in ring and glass would naturally invite inquiry into a possible variation between the glass and the conductor. However, the patentee did disclose the relationship of the various members to one another in terms of specific CTE's; and, contrary to defendant's contentions, this specificity is not lost because the patentee describes the CTE's as being "about" or "approximately" when one considers that CTE's are measured in terms of ten million parts of an inch per inch.

The patentee's first step was to heat the jig to a point where fusion of the glass took place. He then discarded the prevailing belief that annealing slowly was an important step in maintaining the strength of the glass member. This belief was so prevalent that even Webster's Third New International Dictionary of the English Language (unabridged, 1961) under "anneal" warns that glass and steel must be annealed gradually. This was a radical departure from the deeply rooted misconception that a strong glass would not tolerate residual stresses.

The patentee specifies that when the elements are unified at the high point where glass melts and radially flows he rapidly cooled the heated assembly from said temperature to a temperature below the annealing range to solidify and to avoid annealing and to set up stress therein to increase the compressive forces holding the glass in the outer metal member. Rapid cooling was not a new idea, but rapid cooling to avoid annealing for the purpose of setting up stresses was a new idea. The internal stress, retained within the glass, makes it stronger and less susceptible to destruction by thermal shock or vibration. The glass with the stress or pressure retained within resists cracking from the outside inward. The resultant glass-to-metal seal is not only stronger, but in it one can use materials which are less costly than and superior to those formerly used. The patent achieved acclaim and has met with commercial success.

I find that the defendant has not overcome the presumption of validity of the patent and that the patentee's contribution to the art of glass-to-metal seals amounts to invention.

Claim 2 of the patent covers the same steps as Claim 1 but, in addition, states that the heating is done in a substantially neutral atmosphere; that is, neither strongly oxidizing (oxide forming) nor strongly reducing (oxide removing). Controlled oxidization is necessary to produce a clear, bright finished product which the trade desires.

The defendant contends that the claim of a neutral atmosphere is not justified because the plaintiff introduces gas into the chamber at three openings, thus making the oven reducing and not neutral. But that gas, which is composed of 95% nitrogen and 5% hydrogen, is introduced to neutralize the natural oxidizing effects in the interior furnace caused by the conveyor belt when the seals enter and are carried through the oven. I find that the heating is done in a substantially neutral atmosphere and that Claim 2 is valid.

### Prior Art

The Mackay Patent No. 1,456,110, issued in 1923 and the British Patent No. 604,248, issued in 1948, do not in and of themselves anticipate the patent in suit. Neither discloses the fusion of glass to its flow point nor the rapid

cooling of the completed seal. These are two of the critical features of the claims made by this patentee. Patent No. 1,016,320, issued to Burnside in 1912 and Patent No. 2,549,504, issued to Messana in 1951, do not disclose enough to suggest that an ordinary skilled person would improve either the Mackay or the British patent so as to be in anticipation of the patent in suit. The Board of Appeals in referring to Messana and Burnside as secondary patents to Mackay or the British patent stated, which the court adopts as a finding of fact, that " * * * it is not enough that these steps individually are known in the prior art; there must be some indication other than appellant's own application that would lead one to modify the methods of Mackay or the British patents [sic]. We do not believe, that either Messana or Burnside meets this requirement. Neither patent addressed itself to the problem of a seal in which the glass member was subjected to compressive thermal stresses but on the contrary the Messana patent suggests fusion of the glass only where the parts have uniform co-efficients of expansion and an annealing of the glass is permitted and the Burnside patent suggests rapid cooling or hardening of the glass as a means for resisting the tensile stresses allowed to build up in the glass. Thus, the environment of each secondary reference is the antithesis of the objective of either of the primary references."

The defendant's argument that Patent No. 2,279,168, issued to Kalischer in 1942, in combination with Patent No. 2,345,278, issued to Monack in 1944, discloses and anticipates the claims of the patent in suit is rejected; and the court finds that neither Monack nor Kalischer, separately or in combination, anticipates the patent in suit. In an area where the strongest seal possible was being sought, the patentee has gone beyond the assembly of old elements and has accomplished his desired result by fusing the glass member to its flow point and rapidly cooling the assembly by a quick drop through the annealing range.

*Infringement*

I find that the defendant, although using materials having slightly different CTE's from those covered by Claim 1, nevertheless, has adopted the ratio disclosed in the plaintiff's patent—the outer member having the highest CTE; the inner member, the lowest CTE; and the glass, a lower CTE than the outer member but at least as high, if not higher, than the inner member. Infringement cannot be avoided by variations in CTE's where the variations are so minute and where the idea taught by the inventor is copied.

The defendant asserts that it does not rapidly cool but, on the contrary, slowly cools. On the evidence I find that the defendant does rapidly cool at least to a point that is below the annealing range, which is the important feature disclosed by the patent. The rest of the defendant's cooling, which depends to a great extent on the method of cooling, is unimportant and can vary with the efficiency of the cooling method used. I find that the defendant infringes Claims 1 and 2 of the patent.

*Conclusions of Law*

1. This court has jurisdiction of the parties and the subject matter of this action.

2. Patent 3,035,372 is owned by the plaintiff.

3. Claims 1 and 2 of patent 3,035,372 are good and valid.

4. Claims 1 and 2 of patent 3,035,372 have been infringed by defendant's method of making compression glass-to-metal seals.

5. The plaintiff is entitled to a judgment which will include a) a permanent injunction against further infringement of patent 3,035,372 by the defendant and b) damages to be assessed by a master who will be appointed by the court if the parties cannot agree upon a master.

6. The plaintiff's prayer for treble damages is denied as I find that this

patent was honestly contested on both of the questions of infringement and invalidity.

7. The plaintiff's prayer for counsel fees is denied.